```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
UNITED STATES OF AMERICA,                                   :
                                                            :
                                                            :
                 -v-                                        :       22-CR-282 (VSB)
                                                            :
RUBEN AYALA,                                                :       OPINION & ORDER
                                                            :
                         Defendant.                         :
                                                            :
------------------------------------------------------------X
```

VERNON S. BRODERICK, United States District Judge:

  Defendant Ruben Ayala ("Defendant") is charged with possessing a firearm and ammunition after being convicted of a felony, in violation of 18 U.S.C. § 922(g); possessing controlled substances with intent to distribute, in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(C) and 841(b)(1)(D); and possessing a firearm in furtherance of a crime, in violation of 18 U.S.C. 924(c)(1(A).  Before me is Defendant's motion to suppress the firearm, a quantity of cocaine base, and a sum of currency on the basis that his restraint and arrest were not supported by probable cause and therefore the resulting evidence should be excluded.  (Doc. 12.)  Because I find that the officers had reasonable suspicion to believe that Defendant was committing or had committed a criminal offense, Defendant's motion to suppress is DENIED.

  **I.**  **Background**

  On or about April 25, 2022, 911 operators received a report that a robbery had occurred roughly 10 minutes prior.  (Gov.'s Opp. 2.)[1]  The 911 caller provided his last name, phone number, and reported that his brother was robbed at gunpoint while trying to purchase marijuana

---

[1] "Gov.'s Opp." refers to the Government's Opposition to Defendant Ruben Ayala's Pretrial Motions.  (Doc. 18.)

from a dealer. (*Id.*) The caller explained that after the robbery, the dealer ran into a deli located on Anthony Avenue and East Tremont. (*Id.*) The dealer was described as "in his 20s and dressed in black sweatpants, black hoodie, white sneakers, and a white vest." (*Id.*)

Approximately five minutes after the call, three New York Police Department officers (the "Officers") entered the deli and reported smelling "an extremely strong odor of marijuana" once inside. (*Id.*) Body camera footage, (Gov's Opp. Exs A-C), shows the Officers approach Defendant, who was wearing clothing matching the description provided by the 911 caller—black sweatpants, a black hoodie, white sneakers, and a white vest, (*id.*) The Government reports that one of the Officers put his hand on the Defendant's back who "immediately attempted to leave." (Gov.'s Opp. 3.) Another Officer removed Defendant's bag and began a pat down. (*Id.*) During the pat down, one of the Officers felt a hard object in Defendant's pocket which, to the Officer, appeared to be a firearm. (*Id.*) Defendant was then placed into a "bear hug" by another officer. (*Id.*) The search resulted in "the seizure of a 9mm firearm, a quantity of cocaine base and approximately $580 in U.S. currency." (Def.'s Mem. 2.)[2]

**II.    Procedural History**

On May 18, 2022, Defendant was indicted and charged in four counts with (1) possession of ammunition after a felony conviction on or about September 6, 2021; (2) possession of a firearm after a felony conviction on or about April 25, 2022; (3) possession with intent to distribute cocaine base and marijuana for renumeration on or about April 25, 2022; and (4) using and carrying a firearm during and in relation to a narcotics offense on or about April 25, 2022. (Doc. 1.) On September 8, 2022, Defendant filed a motion to suppress the firearm, cocaine base, and currency seized at the time of his arrest, (Doc. 12), a memorandum of law, (Doc. 14), and a

---

[2] "Def.'s Mem." refers to the Memorandum of Law in Support of Ruben Ayala's Motion to Suppress. (Doc. 14.)

2

declaration by his lawyer, (Doc. 13.)  Defendant later filed an affidavit in support of his motion to suppress on September 23, 2022.  (Doc. 17.)  On October 6, 2022, the Government filed its memorandum of law in opposition and provided body camera footage from all three of the Officers.  (Doc. 18.)  Defendant did not file a reply.

### III. Discussion

#### A. *Applicable Law*

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  Under the Fourth Amendment, an arrest qualifies as a seizure and must be made based upon probable cause.  *Ashcroft v. Al-Kidd*, 131 S. Ct. 2074, 2080–2081 (2011).  "Probable cause exists where the arresting officer has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime."  *United States v. Delossantos*, 536 F.3d 155, 158 (2d Cir. 2008) (internal quotation marks omitted).

> The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating these often opposing interests.  Requiring more would unduly hamper law enforcement.  To allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice.

*Brinegar v. United States*, 338 U.S. 160, 176 (1949).

Another type of police stop is an investigatory (or *Terry*) stop.  Unlike an arrest, which requires probable cause, a law enforcement officer can initiate a *Terry* stop based upon a reasonable suspicion that the suspect "is committing or has committed a criminal offense."  *Arizona v. Johnson*, 555 U.S. 323, 326 (2009).  The Second Circuit and Supreme Court have both recognized that the reasonable suspicion standard is "not high."  *Richards v. Wisconsin*, 520 U.S. 385, 394 (1997); *United States v. Weaver,* 9 F.4th 129, 140 (2d Cir. 2021).  "Whether an

officer's suspicion is 'reasonable' is an objective inquiry based on the totality of the circumstances as they would appear through the eyes of a reasonable and cautious police officer, guided by his experience and training." *Grice v. McVeigh*, 873 F.3d 162, 167 (2d Cir. 2017). The reasonable suspicion standard is met where the officer can "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion on the citizen's liberty interest." *Weaver,* 9 F.4th at 140.

If an officer uses more force than necessary to address their reasonable suspicion, a *Terry* stop may become an arrest. *See United States v. Compton,* 830 F.3d 55, 65 (2d Cir. 2016). Courts will consider factors such as "the amount of force used by police, the need for such force, and the extent to which the individual's freedom of movement was restrained, and in particular such factors as the number of agents involved, whether the target of the stop was suspected of being armed, the duration of the stop, and the physical treatment of the suspect, including whether or not handcuffs were used." *Grice*, 873 F. 3d at 167.

Courts have broad discretion when determining whether an evidentiary hearing is needed to decide a motion for suppression. *See United States v. Shamsideen*, 03 CR. 1313, 2004 WL 1179305 *9 (S.D.N.Y. March 31, 2004). Unless a defendant makes a "sufficiently definite, specific, detailed, and nonconjectural" showing that there is a contested issue of material fact, they are not entitled to an evidentiary hearing. *United States v. Pena*, 961 F.2d 333, 339 (2d Cir.1992).

  **B.**  *Application*

Defendant argues that the items seized from him should be suppressed because his "restraint and effective arrest was not supported by probable cause" and therefore "the search of his person incident thereto was also not valid." (Def.'s Mem. 5.) The Government argues that

4

Defendant was the subject of an investigatory stop that did not violate his Fourth Amendment rights because the stop was based on reasonable suspicion and his subsequent pat down was no more intrusive than necessary. (Gov.'s Opp. 7.) Essentially, the parties disagree about whether the Officers' conduct in patting down Defendant was reasonable considering the 911 call. Defendant does not dispute the existence of the 911 call or any of the information provided by the caller. Because Defendant does not demonstrate a specific factual dispute that requires resolution by an evidentiary hearing, I find that an evidentiary hearing is not required.

Considering "both the content of the information possessed by police and its degree of reliability," I find that the stop was reasonable. *Navarette v. California*, 572 U.S. 393, 134 S. Ct. 1683, 1685, (2014). "[S]ociety's interest in effective crime prevention and detection, as well as in officer and public safety while pursuing criminal investigations, can make it constitutionally reasonable in appropriate circumstances and in an appropriate manner both temporarily to detain a person and to pat him down for weapons, even though there is no probable cause to make an arrest." *United States v. Patterson*, 25 F.4th 123, 135 (2d Cir. 2022) (cleaned up); *see also United States v. Padilla*, 548 F.3d 179, 187 (2d Cir. 2008) ("During a lawful stop, if the investigating officer has reason to believe that the detained individual is armed and dangerous, he may conduct a patdown search for concealed weapons.").

There is little to no dispute that on April 25, 2022, officers responded to a 911 call reporting a robbery at gunpoint where the caller provided a description of the clothing and location of the suspected robber. (*See* Gov.'s Opp. 2; Def's Mem. 2.) Defendant was the only person at the location at issue matching the description provided by the 911 caller. (Gov.'s Opp. 2.) The Officers also reported "an extremely strong odor of marijuana as they entered the store," a fact that is consistent with the 911 caller's report that Defendant was selling marijuana. (*Id.*) I

5

find that the Government has established reasonable suspicion for the Officers' *Terry* stop and frisk of the Defendant.  *See United States v. Moore*, No. 21-CR-270-WFK-SJB, 2022 WL 17333057, at *5 (E.D.N.Y. June 30, 2022), report and recommendation adopted as modified, No. 21-CR-270 (WFK), 2022 WL 17250548 (E.D.N.Y. Nov. 28, 2022) (denying motion to suppress where Defendant was "found in the precise location identified by the dispatcher . . . and matched the [physical] description.")  Additionally, Defendant attempted to leave when approached by the officers, (*id.* at 3), and "[u]nusual, evasive, or furtive behavior, especially in the presence of law enforcement" may enhance reasonable suspicion, *Weaver*, 9 F.4th at 148.

      Defendant claims that "[t]he 911 call was unverified" and suggests that the information and informant should have been corroborated.  (Def.'s Mem. 3.)  However, Defendant is wrong in suggesting that the 911 caller should be treated like an anonymous informant.  Defendant ignores facts which support the veracity of the 911 call and the identity of the 911 caller.  First, the caller provided his last name.  (Gov.'s Opp. 2.)  Second, the caller provided his phone number.  (*Id.*)  Third, the caller identified himself as the brother of the robbery victim.  (*Id.*)  Fourth, the caller accurately described the deli as being on Anthony Avenue and East Tremont next to a check cashing provider.  (*Id.*)  Finally, the caller provided an accurate description of Defendant.  (*Id.*)  The Second Circuit has held that "[w]here informants are known, . . . a lesser degree of corroboration is required."  *United States v. Elmore*, 482 F.3d 172, 180 (2d Cir.2007).  Since the 911 call was reliable, it was reasonable for the officers to rely on the caller's description of their suspect's appearance and location.  *See United States v. Patterson*, 25 F.4th 123, 129 (2d Cir. 2022) (overturning exclusion of gun obtained because initial detention was a reasonable investigatory stop based on a 911 caller's description of the apparent assailants as "two black men in a black camaro" who were heading towards the caller's home.)  Based on the

totality of the circumstances, the Officers had reasonable suspicion to initiate the stop and pat-down. Upon discovery of the gun during that pat-down, the Officers had probable cause for Defendant's arrest. *See United States v. Mims,* 237 F. App'x 634, 636 (2d Cir. 2007) ("given that [the officers] had reason to believe [defendant] was in possession of a handgun, the officers were justified in conducting a pat-down to search for weapons. . . . Once the officers found a black handgun . . . they had probable cause to arrest [defendant]").

Defendant's reliance on *United States v. Valentine*, 539 F.3d 88 (2d Cir. 2008), is misplaced because that case is factually distinct from the present case. The defendant in *Valentine* was arrested based on his proximity to a controlled drug delivery after officers incidentally observed him participating in non-criminal conduct. *Id.* at 89–90. The Second Circuit found that there was no probable cause for the arrest because the defendant's actions were ambiguous and the officers "had no information from which they could conclude that [defendant] was involved in the sale of narcotics." *Id.* at 94. Here, in contrast, the Officers had knowledge based upon the 911 call that suggested Defendant was armed with a gun and had used that gun to commit a crime just minutes prior. Unlike the defendant in *Valentine*, who was approached by officers and immediately arrested, Defendant was stopped and frisked based on reasonable suspicion before being arrested based on probable cause. (Gov.'s Opp. 2–3.)

### IV. Conclusion

For the foregoing reasons, Defendant's motion to suppress is DENIED.

SO ORDERED.

Dated: January 12, 2023
      New York, New York

                                                 Vernon S. Broderick
                                                 United States District Judge